## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ADIB EDDIE RAMEZ** | ) | |
| **MAKDESSI,** | ) | |
| Plaintiff, | ) | Civil Action No.: 7:11cv00262 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **HAROLD W. CLARKE, et al.,** | ) | By: Pamela Meade Sargent |
| Defendants. | ) | United States Magistrate Judge |
| | ) | |

The plaintiff, Adib Eddie Ramez Makdessi, an inmate formerly housed at Wallens Ridge State Prison, ("Wallens Ridge"), in Big Stone Gap, Virginia, filed this action for monetary damages and injunctive relief under 42 U.S.C. § 1983.[1] This case is before the undersigned magistrate judge on referral, pursuant to 28 U.S.C. § 636(b)(1)(B).  In his Complaint and Amended Complaint, Makdessi raised claims against numerous defendants employed at Wallens Ridge, alleging that the defendant prison officials failed to protect him from assaults by his cellmate, in violation of his constitutional rights. (Docket Item Nos. 1, 127).

Following the court's disposition of two prior motions for summary judgment, the following claims and defendants remain: Makdessi's Eighth Amendment claims against Lieutenant Tracy Fields, Sergeant Christopher King, Captain Arvil Gallihar, and Officers David Bellamy, Glen Boyd and Thomas Hall,

---

[1] Makdessi initially filed this case pro se, seeking only monetary damages.  Thereafter, subsequent to the court's appointment of counsel to represent plaintiff, pro bono, the Complaint was amended to add injunctive relief as well.

Jr., for failure to protect him from assaults by his cellmate on December 21, 2010.[2] Based on the evidence presented at trial, I find that the defendants did not fail to protect Makdessi on December 21, 2010, either from the assault in his cell or from the assault that occurred in the pod after he ran from his cell, and I recommend that the court enter judgment in favor of all of the defendants on Makdessi's § 1983 claims.

## I. Facts

Makdessi described himself as a 5' 4", 49-year-old man with both physical and mental ailments rendering him vulnerable to harassment and attacks by other inmates. Particularly, Makdessi testified to continuing back problems following surgery in 1993, as well as asthma, bronchitis and depression. He testified that, due to this vulnerability, and a lack of gang affiliation, he has had problems with all of his cellmates and has been forced to pay for protection in the prison with commissary items. Makdessi testified that he also had many problems with Sgt. Christopher King while incarcerated at Wallens Ridge. For instance, Makdessi testified that the first day at Wallens Ridge, Sgt. King began calling him names like "fucking Mexican" and "sand nigger." He also testified that Sgt. King called him a "bitch." In October 2007, while in segregation, Makdessi sent an Inmate Request For Information to the Assistant Warden, which included allegations of mistreatment by his cellmate at that time and that Sgt. King and other correctional officers were calling him a snitch. (Plaintiff's Ex. 2). Makdessi alleges that no investigation into his complaints ever occurred. Makdessi sent a complaint to Assistant Warden Harvey on March 10, 2010, alleging that Sgt. King hated him

---

[2] The plaintiff sought, and the court ordered, dismissal without prejudice of defendant Timothy Sumpter just prior to trial. (Docket Item Nos. 138, 139).

and would not listen to him. (Plaintiff's Ex. 6). Makdessi alleged that Sgt. King and other correctional officers retaliated against him whenever he wrote to the Assistant Warden, and he testified that the officers somehow all knew what he wrote about. Makdessi testified that he never received a response to this complaint.

On August 13, 2010, Makdessi was moved into cell D-142 with Michael Smith, a known gang member with ties to the Gangster Disciples. He testified that Smith stated that Sgt. King "told him [he] was coming." Although Makdessi went to the floor correctional officer to request that he be placed in a different cell or protective custody, and the officer said he would advise Sgt. King, he remained in the same cell with Smith. Makdessi also testified he filed a complaint regarding being housed with Smith, which he actually saw destroyed by Sgt. King.

Makdessi alleges that on December 8, 2010, he was stabbed by Smith and other Gangster Disciples while in a vestibule area. He tried to press the emergency button for help, but Smith was watching. Also, Smith told him not to be a snitch and to straighten himself up. Although Smith convinced Makdessi not to seek help by telling him that this is why Makdessi was paying him protection money, Smith began beating him and calling him a snitch. Makdessi testified that Smith then raped him. Makdessi testified that he tried to report this incident to Sgt. King, but King told him to "get the hell away" from him, and no investigation occurred. Makdessi claimed that Smith threw a bloody shirt and underwear from this assault into the pod trash. However, Makdessi claims to have retrieved these items, placing them into two large envelopes along with letters to the FBI and Justice Detention International. He placed postage on these envelopes, and they were ready to be mailed. Makdessi testified that Smith assaulted him approximately 10

times while they were cellmates, one of which was a sexual assault, one was an attempted sexual assault, and the remaining eight were physical assaults.

Makdessi testified that he sent another letter to the Assistant Warden on December 8 or December 9, 2010, regarding this alleged stabbing, assault and rape that occurred on December 8, 2010.[3]  However, he testified that he received no response to this letter. Makdessi further testified that he had been informed by another inmate known as "Little Man" that Sgt. King had taken a hit out on his life because he filed too many grievances.  In a letter to the FBI, dated December 20, 2010, Makdessi stated that he feared that "the staff … [were] trying to get [him] killed."  (Plaintiff's Ex. 23).  More specifically, he stated that Lt. Fields and Sgt. King tried to take a contract out on his life with the Bloods Gang, but he believed they had done so with the Gangster Disciples due to the stabbing and sexual assault that occurred on December 8, 2010. Makdessi further stated in this letter that, despite all of this, he remained in a cell with Smith, the Gangster Disciple, and despite telling Lt. Fields on the date this letter was written that his life was in danger and that he needed to be placed in protective custody, Lt. Fields walked away and did nothing.

Makdessi further testified that on December 20, 2010, he met with Lt. Fields regarding an informal complaint he had filed concerning missing legal documents from January 2010.  At that time, Makdessi contends that he informed Lt. Fields he feared for his life because his cellmate was a gang leader, and he informed Lt. Fields that he wanted to be placed in protective custody. According to Makdessi, Lt. Fields said he would advise Sgt. King.

---

[3] This letter was not admitted into evidence, but its existence is not challenged.

Makdessi testified that the following day, on December 21, 2010, he was dozing off on his bed when Smith returned from class at approximately 9:20 or 9:30 a.m. He stated that Smith jumped on him and began punching him and beating him, calling him a snitch. Smith showed Makdessi a copy of the letter Makdessi had sent to the Assistant Warden regarding the December 8 assault, which Smith stated he had received from Sgt. King. Smith stated to Makdessi "Before the day is over, we're going to kill you." Makdessi understood this to mean Smith and some of his fellow gang members. Smith then ripped up the letter and flushed it down the toilet. He then resumed punching and kicking Makdessi, who yelled for help and tried to push the emergency button in his cell, but could not do so because Smith pushed him back onto the bed. According to Makdessi, this struggle was very loud. Makdessi testified that, after a while, Smith raped him on the bottom bunk. He testified that Smith continued to punch him in the back and ribs, making it difficult to breathe, and he stated that when he tried to scream, Smith would punch him again. However, Makdessi testified that his screams could have been heard. Makdessi testified that after Smith ejaculated onto the bed, Smith continued to beat him. Eventually, Smith began to clean himself and the cell, and he filled cups with water and threw them onto Makdessi, telling him to clean himself. Smith also gave him a rag that he had used to clean the floor to clean himself with. Smith threw Makdessi's underwear and shirt into the trash. Makdessi redressed in clean underwear, but the same pants he had been wearing prior to the assault. Makdessi testified that he did not put a shirt on due to shoulder pain from the assault.

Testimony at trial established that Wallens Ridge was on restricted movement on December 21, 2010, and the inmates had to eat lunch in their cells instead of going to the chow hall. When opening cell doors to allow inmates to

come out to retrieve lunch trays, four cell doors at a time are opened randomly by the control room operator. Correctional officers testified it was not unusual for inmates to not come out of their cells for lunch, and when this happened, standard procedure required the cell door to be closed for security. Following lunch, the control room operator again would cycle the cell doors open for inmate pod workers to retrieve trash and trays.

Makdessi testified that when his cell door opened for lunch on December 21, 2010, Smith would not allow him to leave. Makdessi testified that he called for help while the door was open, but Smith continued beating him, no one came to help him, and the cell door closed. On cross examination, Makdessi testified that after the cell doors closed for lunch, Smith forced him to perform oral sex, during which time Makdessi bit Smith, causing him to jump away and scream. At that point, Smith began beating him again.

Makdessi testified that while this assault was taking place, other Gangster Disciples named K.C., Peety and Flaco were coming by the cell door. He also testified that correctional officers were performing rounds and looking into his cell, but did nothing to intervene. Smith packed Makdessi's television in a laundry bag, and he took some of his commissary items and a holiday packet to give to another gangster when the cell door was opened for the collection of trash and trays. At one point, Smith yelled for Flaco to come take Makdessi's things, which Makdessi testified was loud enough for anyone to hear. When the cell door opened for trash and trays to be collected, Makdessi ran out as Smith was placing his television outside of the cell for another gangster to retrieve. Flaco caught Makdessi at the top of the stairs, followed shortly thereafter by Smith. Makdessi testified that he heard another gangster, known as KC, say "Throw him off the second tier." Smith

caught Makdessi again on the stairs and began throwing punches. A warning shot was fired, and Smith, Flaco and KC immediately hit the ground, but Makdessi continued to run toward the vestibule.

Makdessi was taken to medical where he received stitches to his face and x-rays of his ribs. He also was transported to an outside hospital for a Physical Evidence Recovery Kit, ("PERK"), test. Makdessi testified that he informed medical staff at the infirmary that Smith had ejaculated onto the sheets and blankets, but these items were never analyzed. The PERK test was negative for the presence of sperm or seminal fluid in the anorectal sample or the perianal/buttocks sample. However, blood was indicated in the anorectal sample and on the inside back of Makdessi's underpants. Blood also was indicated and apparent tissue was observed from Makdessi's fingernail scrapings, but no DNA profile foreign to Makdessi was developed. After discharge from the hospital, Makdessi was housed in Mental Health, ("MH-1"), in the infirmary for 47 days. On December 22, 2010, Dr. Theodore Thompson, a physician at Wallens Ridge, testified that he went to speak with Makdessi for a follow-up in the infirmary. Dr. Thompson testified that Makdessi retracted his allegation of being raped by Smith at that time. Smith admitted that he and Makdessi were fighting on December 21, 2010, but he denied Makdessi's allegations of rape. Smith refused medical treatment following the December 21, 2010, altercation.

Makdessi testified that, while in MH-1, Sgt. King came by and stated "I told these guys to go ahead and kill you," and he also said "You need to stop filing all these grievances because what happened to you is nothing compared to what's going to happen to you." Following this incident, Makdessi was transferred to Keen Mountain Correctional Center, ("Keen Mountain"), where he was placed in

protective custody. At the time of trial, he remained incarcerated at Keen Mountain.

According to Operating Procedure, ("OP"), 830.6, "Offender Enemy Information Management," its purpose is to establish a standardized system of identifying, verifying and documenting offender enemies and separation needs within facilities operated by the DOC. (Docket Item No. 147, Ex. 74). This OP states that when an Officer in Charge determines there is an immediate need to separate offenders because a potentially dangerous situation exists, or there may be an escalation of a conflict and the safety of staff or offenders may be threatened, the Officer in Charge shall take appropriate measures to protect those offenders involved and maintain the security of the facility. Operating Procedure 830.6 proceeds to state that such measures may include internal separation or placement in General Detention and that such offenders will be referred to the Institutional Classification Authority, ("ICA"), to review the case and make a recommendation regarding the need for assignment to segregation, enemy documentation or other actions. An "enemy" is defined as a Virginia DOC offender whose identity is known and verified by correctional staff to pose a significant threat to the life of another offender.

## II. Analysis

Makdessi alleges that the defendants failed to protect him from the beating and alleged sexual assault by his cellmate that occurred on December 21, 2010, both in his cell and in the pod once he ran out of his cell, in violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences,

but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). It imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. Prison officials violate an inmate's Eighth Amendment right to be free from physical harm inflicted by other inmates when prison officials are deliberately indifferent to "specific known risks of such harm." *Pressly v. Huto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). To establish that prison officials are liable under § 1983 for failure to protect an inmate from violence at the hands of other inmates, a plaintiff must show: (1) "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003), and (2) that the prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *see Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003). As to the first prong, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. As to the second prong, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

A prison official is deliberately indifferent if he knows of an excessive risk to inmate health or safety and disregards or fails to respond to that risk. *See Farmer*, 511 U.S. at 844-45. Therefore, liability under this standard requires two showings. First, the evidence must show that the prison official subjectively recognized a substantial risk of harm. It is not sufficient that the official should

have recognized it; he must actually have perceived that risk. *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Second, the evidence must show that the prison official subjectively recognized that his actions were "inappropriate in light of that risk." *Rich*, 129 F.3d at 340 n.2. It is insufficient that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).

I find that Makdessi clearly suffered serious physical injuries resulting from the assaults that occurred on December 21, 2010. The medical records show that Makdessi had multiple facial lacerations and contusions, contusions to the left rib area, lacerations to the nose and swelling to the right forehead region. He received three sutures in the left eyebrow and two sutures in the right lateral eye region. Therefore, the remaining issue for the court's determination is whether the evidence at trial showed that the defendants were deliberately indifferent to a known substantial risk to Makdessi's safety, but disregarded it or subjectively acted inappropriately in light of that known risk. For the reasons that follow, I find that the evidence does not show the defendants were so deliberately indifferent, thereby foreclosing any finding that they failed to protect him in violation of the Eighth Amendment, and I recommend that the court find the same.

## A. Defendants Bellamy, Hall and Boyd

With regard to defendants Bellamy, Hall and Boyd, Makdessi argues that they should have known of the assault and alleged rape because they all made rounds or were present in his pod on the morning of December 21, 2010, and they should have heard or seen the assault in his cell taking place. Officer David

Bellamy testified that he was working on December 21, 2010, helping to operate all three pods in the D Building during the morning due to staffing issues. He testified that while he was performing security rounds on the top tier of Makdessi's pod where his cell was located, Makdessi asked him how he was doing. Bellamy testified that when he went to Makdessi's cell, there was nothing out of the ordinary, Makdessi was near his bed, and Smith was lying on the top bunk. Bellamy saw no blood. The video recorded evidence shows that Bellamy was in front of Makdessi's cell door at 10:56 a.m., approximately an hour and a half after Makdessi alleges the assault and rape began. Shortly thereafter, Bellamy went on lunch break, and he was not in Makdessi's pod when the cell doors opened for the feeding of lunch. He also was not present when Makdessi ran from the cell at approximately 11:55 a.m. Bellamy testified that he never received any communication from Makdessi that he feared for his life, that he was sexually assaulted or that he feared being sexually assaulted.

Based on this evidence, I find that Makdessi has failed to show that Officer Bellamy was subjectively aware of a substantial risk of harm to Makdessi, but, nonetheless, recognized that his actions were inappropriate in light of that risk. In other words, I find that Makdessi has failed to show that Officer Bellamy was deliberately indifferent to substantial risk to Makdessi's health or safety. Makdessi alleges that Officer Bellamy must have seen the assault or the bloody evidence of the assault in the cell during his security rounds. Makdessi also alleges that Officer Bellamy must have heard him crying and yelling loudly for help, but took no action to remove him from the cell to prevent Smith from continuing to harm him. However, as stated above, Bellamy testified that when he looked into Makdessi's cell at 10:56 a.m., approximately an hour and a half after Makdessi alleges the assault began, nothing appeared to be out of the ordinary, Makdessi was near his

bed, Smith was lying on the top bunk, and Bellamy saw no blood. Makdessi did not advise Officer Bellamy that anything was wrong, but simply asked him how he was doing. Additionally, while Makdessi argues that Officer Bellamy *should* have heard him crying and yelling loudly for help, that is not the standard by which this court is constrained. Instead, Makdessi must show that Officer Bellamy *did* hear him yelling for help, but chose to respond inappropriately thereto. Makdessi has made no such showing. It is for these reasons that I find that Officer Bellamy did not fail to protect Makdessi from the assault and alleged rape by his cellmate on December 21, 2010, in violation of the Eighth Amendment. The court notes that Makdessi can sustain no failure to protect claim against Officer Bellamy insofar as the assault that occurred once he ran from his cell because Bellamy was not present in Makdessi's pod at that time.

With regard to Officer Thomas Hall, Jr., he testified that he was working in the D Building on December 21, 2010, doing rounds, pulling inmates for showers and performing security checks, but he did not remember what times he performed rounds. He was not present in the D Building at 11:55 a.m. when Makdessi ran out of the cell, but he responded to the incident. Officer Hall encountered Makdessi as he ran into the vestibule. Hall ordered him to get down, and he complied. As with Officer Bellamy, Makdessi argues that Officer Hall *should* have heard him crying and yelling loudly for help while he was in the D Building or *should* have seen the assault occurring in the cell or the evidence of the assault, but that is not the standard by which this court must judge the defendants' actions. Instead, Makdessi must show that Officer Hall *did* hear him yelling for help, but disregarded his cries or chose to respond inappropriately thereto. There is no evidence to show that Officer Hall *did* hear Makdessi yelling for help or *did* see any assault or evidence of an assault in his cell, but chose to ignore these things or act inappropriately in

response thereto. That being the case, I find that Officer Hall did not fail to protect Makdessi from the alleged assault and rape by his cellmate in his cell on December 21, 2010, in violation of the Eighth Amendment, and I recommend that the court find the same. Again, just as with Officer Bellamy, Officer Hall was not present in Makdessi's pod when Makdessi ran from his cell, followed by Smith and the other two inmates. That being the case, I find that Makdessi also can sustain no failure to protect claim against Officer Hall with regard to that assault, and I recommend that the court so find.

Next, unlike Officers Bellamy and Hall, Officer Glen Boyd was present in Makdessi's pod during both the assault and alleged rape in the cell and the assault that occurred after Makdessi ran out of the cell. Initially, beginning at 6:00 a.m., Boyd worked the control room, located approximately 35 to 40 feet from Makdessi's cell, before assuming the gunman position shortly after 10:00 a.m. Boyd testified that he saw nothing unusual about Makdessi's cell while working either position until Makdessi burst from his cell when the doors opened for the collection of trash and trays. Makdessi was followed by Smith, who struck Makdessi on the head after struggling slightly. Boyd said two other inmates started running toward the fight. He testified that, at that point, he already had issued a verbal warning to stop, he had pressed the emergency alert buzzer, and he had fired a warning shot, ultimately quelling the altercation.

Boyd testified that his contact with Makdessi prior to this date was limited, describing him as "standoffish." He testified Makdessi never told him he feared for his life, that he was sexually assaulted or that he feared he was going to be sexually assaulted. Despite Makdessi's claim that he met with Boyd on December 8 or December 9, 2010, regarding a previous sexual assault by Smith Boyd's attendance

record shows that he was not working on those days. Boyd testified if Makdessi told him he feared for his life, he would have immediately separated him and Smith pursuant to standard protocol.

Again, Makdessi contends that Boyd *should* have heard or seen the assault and rape occurring in his cell, but did nothing to stop it. However, the evidence does not show that Boyd *did* hear or see the assault and rape occurring, as is necessary to make a showing of deliberate indifference. Despite Boyd's testimony that the control room window, which was approximately 30 to 40 feet from Makdessi's cell, was open on the morning of December 21, 2010, he testified that he did not hear or see anything unusual about Makdessi's cell until he burst from it when the cell doors opened for the collection of trash and trays at approximately 11:55 a.m. Therefore, I cannot find that Officer Boyd knew of a substantial risk of harm to Makdessi, but disregarded it or took actions he knew were inappropriate in light of that risk. That being said, I cannot find that Officer Boyd failed to protect Makdessi from the assault and alleged rape that occurred in his cell on December 21, 2010, in violation of the Eighth Amendment, and I recommend that the court find the same.

Upon seeing Makdessi run from his cell followed by Smith and then the two other inmates, Boyd took immediate action by giving a verbal command to stop, activating the emergency alert buzzer and firing a blank warning shot. These quick actions quelled the altercation when all three inmates chasing Makdessi stopped and dropped to the ground. I find that Officer Boyd's actions, once he subjectively became aware of the substantial risk to Makdessi's safety, were more than appropriate and ultimately ended the assault that transpired outside of Makdessi's cell in the pod. Thus, I also cannot find that Officer Boyd failed to protect

Makdessi from the assault that occurred once he ran from his cell into the pod on December 21, 2010, in violation of the Eighth Amendment, and I recommend that the court find the same.

### B. Defendants Gallihar, Fields and King

Makdessi also argues that Capt. Gallihar, Lt. Fields and Sgt. King failed to protect him from the assault in his cell on December 21, 2010, in violation of the Eighth Amendment, based on information they had received either verbally directly from Makdessi or through grievances Makdessi had filed prior to that time, from which they learned Smith posed a substantial risk to his safety, but they failed to take steps to investigate or assign Makdessi to a single cell or place him in protective custody as he requested.

First, contrary to Makdessi's testimony, Sgt. Christopher King testified that he never threatened Makdessi, and he never asked any inmate to harm or kill Makdessi. He testified that he viewed inmates filing grievances against him as just part of his job. King testified that he was working in Makdessi's pod in the control room on December 21, 2010, while Officer Boyd was working the gunman position. King testified that it did not raise any red flags when no one emerged from Makdessi's cell when the door opened for lunch, and he stated that standard protocol was to close the cell door for security when this occurred. King testified that when Makdessi's cell door was opened for the collection of trash and trays, a laundry bag was set out and then a few seconds later, Makdessi came running out followed by Smith. King saw Smith attempt to strike Makdessi. Two other inmates ran from their cells toward the scuffle before King could close all of the cell doors. King testified that it was then that Officer Boyd gave a verbal command to stop, he

activated the emergency alert buzzer and then fired a blank round as a warning shot. Although the three inmates chasing Makdessi laid face down on the floor, Makdessi continued running into the vestibule area beneath the control room. At this time, King already had notified staff by radio of the fight and was opening the doors so responding officers could enter the pod.

Makdessi alleges that he informed Lt. Fields and Sgt. King personally that Smith had stabbed, assaulted and raped him two weeks prior to the December 21, 2010, incident, but they took no action to investigate, to separate Makdessi and Smith, or to otherwise protect him. Makdessi testified that when he tried to inform Sgt. King about the stabbing, beating and rape by Smith and other Gangster Disciples that occurred on December 8, Sgt. King told him to "get the hell away" from him. Makdessi testified that no investigation into this incident ever occurred. Makdessi also testified that on December 20, 2010, the day before the assault and alleged rape at issue, while meeting with Lt. Fields regarding a separate issue, he told him he feared for his life because his cellmate, Smith, was a gang leader, and he requested that he be placed in protective custody. According to Makdessi, Lt. Fields stated that he would advise Sgt. King, but nothing ever happened.

Lieutenant Fields disputes Makdessi's allegation that he complained of any problems with his cellmate on December 20, 2010, that he indicated that he was in fear for his life from anyone, that he was being sexually assaulted or that he feared being sexually assaulted by anyone. Fields also testified that Makdessi did not appear particularly fearful at that time. Lieutenant Fields testified that when an inmate informs him that he is in fear for his life, the inmate is immediately placed in segregation. He stated that several individuals have the authority to do this, not just the lieutenant. Fields testified that if an inmate alleges sexual assault, both

parties are immediately placed in segregation on general detention status. He also stated that if an inmate refuses to return to his cell, he is placed in segregation. Likewise, Sgt. King testified he was never made aware that Makdessi feared for his life or that he feared being sexually assaulted. King also testified that Makdessi did not inform him of the alleged stabbing, assault and rape on December 8.

Captain Arvil Gallihar testified that his duties on December 21, 2010, included serving as the Watch Commander of the day shift, making him responsible for the overall operations of all of the buildings. Captain Gallihar was not present in Makdessi's pod when either assault occurred. When he responded, Makdessi already was restrained in the vestibule area. He stated that Makdessi informed him that he and his cellmate had been fighting for hours because his cellmate had been trying to rape him. Captain Gallihar testified that a charge for fighting was issued to Makdessi. Captain Gallihar also testified that Makdessi never informed him that he feared for his life, and he never made any allegations of being raped to him.

I find that the testimony of these defendants is strengthened by that of Officers Bellamy, Hall and Boyd, all of whom testified that Makdessi never advised them that he feared for his life, that he was sexually assaulted or that he feared being sexually assaulted. Additionally, as stated previously, despite Makdessi's contention that he informed Boyd on either December 8 or December 9, 2010, about the prior assault and rape by Smith, attendance records show that Boyd was not working on either of those dates.

In addition to this testimony by the defendants regarding Makdessi's failure to personally advise them of his alleged fear of his cellmate, Lt. Fields testified that

if an inmate refused to return to his cell, he would immediately be placed in segregation. Thus, if Makdessi truly feared for his safety or his life at the hands of Smith, all he had to do was refuse to return to his cell. Makdessi did not do this. Furthermore, while Makdessi alleges that the defendants were, essentially, out to harm him or even kill him, Hall testified that Makdessi came in contact with correctional officers other than the defendants on a daily basis in the chow hall. Makdessi could have informed any of these other correctional officers that he feared for his life or safety and, according to standard protocol, as testified to by the defendants, Makdessi and Smith would have been separated. However, Makdessi does not allege that he told any of these other correctional officers about such fears, but only the individuals whom he claims intended to harm him. I find that if Makdessi truly feared for his life or safety, he would have informed staff at Wallens Ridge other than the very individuals he now claims had some type of grudge against him or were complicit therewith.

It is for all of these reasons that I find Makdessi's allegations that he personally informed Capt. Gallihar, Lt. Fields and Sgt. King prior to December 21, 2010, that he feared for his safety and/or his life at the hands of his cellmate, incredible. That being the case, I cannot find that these defendants were aware of a substantial risk of harm to Makdessi on this basis, but disregarded it or subjectively responded to it inappropriately. Therefore, I also cannot find that these defendants failed to protect Makdessi from the assaults that occurred on December 21, 2010, and I recommend that the court find the same.

Makdessi also claims that Lt. Fields, Sgt. King and Capt. Gallihar were aware, prior to December 21, 2010, that he feared for his life or safety at the hands of Smith through the numerous grievances he filed related thereto, but they did

nothing.  The defendants, however, dispute this contention.  While the evidence presented at trial makes clear that Makdessi, in fact, did file numerous grievances in which he claims that he was sexually assaulted while at Wallens Ridge and that he suffered psychological effects as a result thereof, only one grievance was admitted into evidence which states that Makdessi was sexually assaulted by Smith prior to December 21, 2010.  However, this Offender Request For Information, dated October 28, 2010, was directed to Mental Health, not Lt. Fields, Sgt. King or Capt. Gallihar.  (Plaintiff's Ex. 19). In this Request, Makdessi stated that he had "reported to security [and] filed many grievances but no help."  He further stated that he was sexually assaulted by his "current cellmate," which would have been Smith, and that he was afraid to talk to Qualified Mental Health Professionals, ("QMHPs"),  in the presence of staff because he feared retaliation from Sgt. King and Lt. Fields.  The defense disputes that the original Request actually contained these specific allegations regarding having filed grievances with security, having been sexually assaulted by Smith or fearing retaliation from Sgt. King and Lt. Fields, but that Makdessi added them after-the-fact.  In any event, I find that it makes no difference since the Request was responded to by QMHP Clark, and there is no indication that Sgt. King, Lt. Fields or Capt. Gallihar had any knowledge of the Request.

Moreover, Lt. Fields testified that he would only see those grievances that were assigned to him upon leaving the mailroom.  He also testified that he would see grievances related to security issues in his pod, and he might hear about sexual assault allegations, but the Investigation Department would not always bring such things to his attention.  Sergeant King testified that he was never made aware of any grievances by Makdessi that he feared for his life or that he feared being

sexually assaulted. Captain Gallihar also testified that he did not recall seeing any grievances regarding sexual assaults filed by Makdessi.

For all of the above-stated reasons, I cannot find that Sgt. King, Lt. Fields or Capt. Gallihar knew of a substantial risk of harm to Makdessi based on grievances filed by him prior to December 21, 2010, but disregarded them or failed to act appropriately in response thereto. That being the case, I also cannot find that they failed to protect him from the assaults that occurred on December 21, 2010, in violation of the Eighth Amendment, on this basis, and I recommend that the court find the same.

Although it does not change the ultimate recommended disposition of this case, it is worth stating that the evidence admitted at trial undoubtedly shows that Makdessi filed numerous grievances and complaints to various departments, and he wrote letters to the Assistant Warden and the Director of the VDOC, alleging that he had been sexually assaulted on multiple occasions while incarcerated at Wallens Ridge. For instance, he complained that he suffered psychological trauma as a result of these assaults, but had not been able to receive any mental health treatment. In one of these complaints, dated December 20, 2009, directed to the Medical Department, Makdessi alleged he suffered from post-traumatic stress disorder and depression due to four sexual assaults since being incarcerated at Wallens Ridge for the previous three years. (Plaintiff's Ex. 4). Qualified Mental Health Professional Clark responded, in part, "Hopefully you will be well soon." Also, it appears that the standard protocol of separating inmates alleging sexual assault was not followed when Makdessi filed the Offender Request For Information on October 28, 2010, stating that he had been sexually assaulted by his cellmate. Captain Gallihar testified that the standard protocol of immediately

separating inmates alleging sexual assault applied to all employees, and that QMHP Clark, who responded to this Request, would have been expected to act accordingly upon receipt of such information. In essence, whether Makdessi is found to be credible or not as to the issue at hand, and whether or not he can show that the defendants failed to protect him from the assaults on December 21, 2010, it is clear to the undersigned that the staff at Wallens Ridge should have been more diligent in handling Makdessi's claims of sexual assault.

For all of the reasons stated herein, I find that Makdessi cannot show that the defendants failed to protect him from either the assault that occurred in his cell or the assault that occurred in the pod after he ran from his cell on December 21, 2010, in violation of the Eighth Amendment. I, therefore, recommend that the court enter judgment in favor of all of the defendants on Makdessi's § 1983 claims.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Makdessi was assaulted in his cell and in the pod by his cellmate on December 21, 2010;
2. Officers Bellamy, Hall and Boyd were present in Makdessi's pod at some time during the morning of December 21, 2010, while the assault occurred in Makdessi's cell;
3. Officers Bellamy, Hall and Boyd were not aware of a substantial risk of harm to Makdessi, but, nonetheless, disregarded that risk or took actions they knew were inappropriate in light of that risk;
4. Therefore, Officers Bellamy, Hall and Boyd were not deliberately indifferent to a substantial risk of harm to Makdessi, and they did not fail to protect him from the assault that occurred in his cell, in violation of the Eighth Amendment;

5.    Sergeant King and Officer Boyd were present in Makdessi's pod when Makdessi ran from his cell and was assaulted by his cellmate in the pod;

6.    Once Makdessi ran from his cell, chased by three inmates, Sgt. King and Officer Boyd were subjectively aware of a substantial risk of harm to Makdessi;

7.    Sgt. King's and Officer Boyd's combined actions were more than appropriate in light of that risk and quickly quelled the altercation;

8.    Therefore, Sgt. King and Officer Boyd were not deliberately indifferent to a substantial risk of harm to Makdessi, and they did not fail to protect him from the assault that occurred in the pod, in violation of the Eighth Amendment;

9.    The evidence does not show that Makdessi personally informed Capt. Gallihar, Lt. Fields or Sgt. King that he feared for his life or safety or that these defendants learned of such fears through numerous grievances filed by Makdessi;

10.    Therefore, Capt. Gallihar, Lt. Fields and Sgt. King were not subjectively aware of a substantial risk of harm to Makdessi prior to December 21, 2010, but, nonetheless, disregarded that risk or took actions they knew were inappropriate in light of that risk; and

11.    Thus, Capt. Gallihar, Lt. Fields and Sgt. King were not deliberately indifferent to a risk of harm to Makdessi, and they did not fail to protect him from the assaults that occurred on December 21, 2010, in violation of the Eighth Amendment.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant judgment in the defendants' favor on Makdessi's claims based on failure to protect.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written

objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, Chief United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 3rd day of May, 2013.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE