CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 24 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADIB EDDIE RAMEZ MAKDESSI, | ) | CASE NO. 7:11CV00262 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | (Adopting Report and Recommendation) |
| | ) | |
| LT. FIELDS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

This prisoner civil rights action under 42 U.S.C. § 1983 claims that the defendant prison officials failed to protect plaintiff from sexual and physical assaults by his cell mate on December 20, 2010, in violation of his Eighth Amendment rights.[1] The case is presently before the court on the report and recommendation ("the report") of Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b)(1)(B), and plaintiff's objections thereto. For the reasons that follow, this court will overrule plaintiff's objections, adopt the report, and dismiss the action with prejudice.

### Facts

Plaintiff Adib Eddie Ramez Makdessi makes no objection to the accuracy of the facts included in the report's summary of the hearing evidence.[2] Therefore, the court adopts the "Facts" section of the report and offers only a brief overview of those facts here, to set Makdessi's claims in context.

At the time his § 1983 claims arose, Makdessi was incarcerated at Wallens Ridge State Prison. Makdessi testified that on the morning of December 21, 2010, his cell mate, Michael

---

[1] As relief on this claim, plaintiff seeks to recover monetary damages and injunctive relief directing that the defendant officers can have no future contact with him.

[2] The court will discuss separately Makdessi's assertion that the report's factual summary omits certain facts related to his claim against Defendants Sgt. King, Lt. Fields, and Capt. Gallihar.

Smith, physically assaulted and raped him inside their cell. Shortly after the control room officer opened the cell door for removal of lunch trays and trash, Makdessi ran out of the cell with Smith in pursuit. Smith and another inmate caught Makdessi and started punching him. When a warning shot sounded, the assailants immediately lay down on the ground, and Makdessi ran into the vestibule. Officers took Makdessi to the medical unit, where he received stitches to his face and underwent x-rays. Officers also transported him to an outside hospital for a Physical Evidence Recovery Kit ("PERK") test. He then spent 47 days in the prison infirmary before being transferred to a protective custody unit at Keen Mountain, where he is currently incarcerated.

## Procedural Background

Makdessi filed the § 1983 complaint pro se. The court denied in part defendants' motion for summary judgment on the merits of Makdessi's claims.[3] Thereafter, counsel accepted appointment to represent Makdessi. Because Makdessi has at no time invoked his right to a jury trial, the court referred the action to Magistrate Judge Sargent for appropriate proceedings and preparation of proposed findings of fact and conclusions of law and recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

Judge Sargent conducted an evidentiary hearing on March 12-14, 2013, in Big Stone Gap, Virginia. She heard testimony and viewed DVDs of camcorder and surveillance camera footage. On May 3, 2013, she issued her report. The report addresses Makdessi's three remaining claims, which allege that defendants failed to protect him, in violation of his Eighth Amendment rights, as follows: (1) Officers David Bellamy, Glen Boyd, and Thomas Hall knew

---

[3] In an earlier opinion and order, the court denied defendants' motion for summary judgment on the ground that Makdessi failed to exhaust available administrative remedies before filing this action in violation of 42 U.S.C. § 1997e(a).

that Makdessi was under attack in his cell on December 21, 2010, and failed to respond appropriately; (2) Officer Boyd and Sergeant King, who manned the control room on December 21, 2010, knew that Makdessi was under attack in his cell and failed to respond appropriately;[4] and (3) Lieutenant Fields, Sergeant King, and Captain Gallihar learned, through grievances and through face-to-face meetings with Makdessi prior to December 21, 2010, that Smith posed a substantial risk to Makdessi's safety, but did not respond reasonably to that risk. The report finds that Makdessi's evidence is insufficient to prove each of these claims by a preponderance and recommends granting judgment for the defendants. Makdessi, through counsel, has filed objections to portions of the report, and defendants have responded.

## Standards of Review

In a civil proceeding, the plaintiff ultimately carries the burden of proving each of the elements of his claim by a preponderance of the evidence. In re Winship, 297 U.S. 358, 371 (1970). "The burden of showing something by a preponderance of the evidence . . . requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (quotation marks omitted); see also McNeal v. United States, 689 F.2d 1202 (4th Cir. 1982) (affirming a finding for the defendant where the evidence was in equipoise).

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of any portions of the magistrate judge's recommendation to which a specific objection is made. 28 U.S.C. § 636(b)(1). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the

---

[4] Shortly before the evidentiary hearing, the magistrate judge granted Makdessi's motion for voluntary dismissal of his claims against Defendant Sumpter.

judge warrants," the authority and the responsibility to make an informed final determination remains with the district judge. United States v. Raddatz, 447 U.S. 667, 682-83 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).

In light of Makdessi's objections, the court has conducted a de novo review of the hearing transcript and other pertinent portions of the record. For reasons discussed herein, the court concludes that the evidence presented fully supports the magistrate judge's factual findings and legal conclusions as to all claims. Accordingly, the court will overrule plaintiff's objections and adopt the magistrate judge's report in its entirety.

## Discussion

The Eighth Amendment's prohibition on cruel and unusual punishment obligates prison officials to take reasonable precautions to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 25, 832-33 (1994) (omitting internal quotation marks). A prisoner alleging that prison officials have failed to keep him reasonably safe from other inmates must show that (i) objectively, the prisoner was incarcerated under conditions posing a substantial risk of serious harm and (ii) subjectively, the defendant was deliberately indifferent to those conditions. Id. at 834.

The magistrate judge recommends a finding that Makdessi has satisfied the objective element of this standard by demonstrating that he was assaulted on December 21, 2010, and suffered serious physical injuries. (Report 10, 21.) Thus, the report focuses primarily on the

second, subjective element. "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

> Liability under this standard . . . requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." Id. As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. See Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001).
> Although the deliberate indifference standard requires a showing of actual knowledge as to both elements, it "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842, 114 S. Ct. 1970.

Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004).[5]

Claims (1) and (2): Report Adopted without Objection

Makdessi makes no specific objection to the findings and conclusions on which the magistrate judge recommends granting judgment for the defendants as to Claims (1) and (2). Finding the report to be consistent with the record and the law with respect to these claims, the court will adopt these portions of the report without further discussion.[6] Further, the court will grant judgment for the defendants as to Claims (1) and (2).

Claim (3): Knowledge of the Risk before December 21, 2010

Makdessi objects, on factual and legal grounds, to the report's finding that Makdessi failed to adduce evidence proving Claim (3) by a preponderance. He asserts that in the weeks

---

[5] Because a deliberate indifference standard applies whether the plaintiff was a pretrial detainee or a convicted felon at the time of the alleged failure to protect, courts rely interchangeably on cases from both settings. See, e.g., Parrish, 372 F.3d at 302 n.11.

[6] On portions of the magistrate judge's report and recommendation to which no party has objected, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). The court is satisfied that there is no clear error on the face of the record as to Claims (1) and (2).

preceding the altercation on December 21, 2010, Defendants Sgt. King, Lt. Fields, and Capt. Gallihar must have been exposed to facts from which they must have known that Makdessi was at risk of assault by his cell mate. Makdessi complains that the magistrate judge's report offers only two paragraphs about the applicable legal standard and fails to discuss the nuanced legal theories under which he believes he has proved defendants' subjective knowledge through circumstantial evidence. Makdessi also asserts that the report omits certain facts related to these theories.

<u>Verbal Warnings that Smith Posed a Risk to Makdessi</u>

As reviewed in the report, Makdessi testified that a Gangster Disciple inmate stabbed him and Smith first raped him on December 8, 2010, because they had heard he was a "snitch" and wanted to teach him "a lesson." (Tr. 79, Mar. 12, 2013.) Makdessi testified that when he told Sgt. King the next day he had been sexually assaulted, Sgt. King told him to "[g]et back to your table," and no investigation followed. (Tr. 80-81.) Makdessi related that on December 20, 2010, while meeting with Lt. Fields on a separate matter, he told Lt. Fields that his life was in danger, he wanted to be in protective custody, and his cell mate was a gang leader. (Tr. 86.) Lt. Fields said he would tell Sgt. King, but did not move Makdessi out of the cell with Smith. (Tr. 86.)

The report finds that Makdessi's testimony of how he personally informed Sgt. King and Lt. Fields of the risk Smith posed is outweighed by defendants' evidence to the contrary, and this finding is consistent with the record. (Report 15-18.) Sgt. King testified that he did not know Makdessi feared being killed or sexually assaulted. (Tr. 138-141, Mar. 13, 2013.) When asked about Makdessi's claim that he told Sgt. King about the stabbing and rape on December 8, 2010, Sgt. King said, "I have no idea what he's talking about." (Tr. 140.) Sgt. King also testified that he first learned of any risk of harm on December 21, 2010, when Makdessi ran from his cell with

Smith after him. (Tr. 135-36.) Sgt. King testified that the attack in the pod ended within eight seconds after Makdessi left his cell, when Officer Boyd fired a warning shot. (Tr. 133.) In the meantime, King said, he had already radioed for backup, which began arriving two seconds after the warning shot, and King opened doors to let the backup officers into the pod. (Tr. 135-36.)

Lt. Fields testified that at his meeting with Makdessi on December 20, 2010, the inmate did not appear fearful, did not mention any trouble with Smith, and did not tell Lt. Fields that he had been or feared being sexually assaulted. (Tr. 72-73.) Lt. Fields also testified that if Makdessi had refused to return to his cell or said he feared for his life, Lt. Fields would have followed policy by placing him immediately in segregation for his protection. (Tr. 73.) Lt. Fields also testified that other officers have authority to segregate an inmate who tells them he fears for his life or has been sexually assaulted. (Tr. 68-69.) Capt. Gallihar testified that Makdessi had never told him about fearing for his life or being raped before December 21, 2010. (Tr. 199.)

The report finds that this testimony from Sgt. King, Capt. Gallihar, and Lt. Fields is "strengthened" by similar testimony from the other defendants that Makdessi never told them he feared assault from Smith. (Report 17.) As the report notes, Makdessi's credibility in general is undermined by attendance records showing that Boyd was not working on December 8 or 9, 2010, in contradiction of Makdessi's testimony that he reported the stabbing and rape to Boyd on one of those days. (Tr. 187-89; Deft. Ex. 10.)

In addition, the report finds from defendants' testimony that "if Makdessi truly feared for his safety or his life at the hands of Smith, all he had to do was refuse to return to his cell. Makdessi did not do this." (Report 18; Tr. 70, Mar. 13, 2013.) The report also notes that to be protected from Smith, Makdessi could have informed officers other than defendants that he feared for his life or safety, but Makdessi did not testify that he did so. (Report 18.) Therefore,

the report recommends the finding that "[t]he evidence does not show that Makdessi personally informed Capt. Gallihar, Lt. Fields or Sgt. King that he feared for his life or safety." (Report 22.) The court believes that this finding is amply supported from the testimony and the record.

While Makdessi objects to the conclusion that these defendants were not aware Smith posed a risk prior to December 21, 2010, Makdessi does not object specifically to the report's finding that he has failed to prove he informed them verbally of the risk. He does not challenge any of the facts from which the report reaches this finding or assert that the report omits any fact relevant to this issue.[7] For these reasons, the court overrules Makdessi's objection, to the extent that it challenges the report's finding of insufficient evidence that he verbally notified defendants that he feared Smith or had been assaulted by him.

Other Evidence that Smith Posed a Risk to Makdessi

The report addresses separately Makdessi's claim that Capt. Gallihar, Lt. Fields, and Sgt. King knew from his prior inmate complaints and grievances, and other evidence, that Smith posed a substantial risk of harm to Makdessi. As exhibits at the hearing, plaintiff presented dozens of such documents he sent to prison officials between 2007 and 2010. In several of these documents, he mentions being sexually and physically assaulted while at Wallens Ridge and suffering psychological effects from those assaults. The report finds, however, and Makdessi concedes, that only one of the documents filed before December 21 stated that Makdessi had previously been assaulted by his current roommate. (Pl. Ex. 19.) This "OFFENDER REQUEST FOR INFORMATION," dated October 28, 2010, was addressed to Mental Health,

---

[7] See, e.g., Miller v. Currie, 50 F.3d 373, 380 (6th Cir.1995) (requiring that objections direct the Court to a factual finding which is both "dispositive and contentious").

not to Lt. Fields, Sgt. King, or Capt. Gallihar.[8] (Pl. Ex. 19.) The report finds no indication that Lt. Fields, Sgt. King, or Capt. Gallihar had knowledge of this request form or its contents. (Report 19.)

The report supports this finding by reference to defendants' testimony that before December 21, 2010, they did not know of any written or verbal allegation Makdessi had made about fearing for his life or fearing sexual assault. (Report 19-20.) Lt. Fields explained that while he would see grievances or hear about allegations related to security issues in his pod, sometimes grievance recipients would assign them elsewhere for response, and investigators would not always report all sexual assault allegations to Lt. Fields or his staff. (Report 19.) For these reasons, the report recommends findings and conclusions that "[t]he evidence does not show that . . . Capt. Gallihar, Lt. Fields or Sgt. King . . . learned . . . through numerous grievances filed by Makdessi" that he feared for his life and safety, that these defendants "were not subjectively aware of a substantial risk of harm to Makdessi prior to December 21, 2010," that "they were not deliberately indifferent to a risk of harm to Makdessi, and they did not fail to protect him from the assaults that occurred on December 21, 2010, in violation of the Eighth Amendment." (Report 22.)

Makdessi objects to these findings and conclusions on factual and legal grounds. First, Makdessi claims he proved deliberate indifference by showing that "the risk of harm was

---

[8] Exhibit 19 includes two versions of the October 28, 2010, request form. On one version (with an original "received" stamp), Makdessi states that he had "reported to security [and] filed many grievances but no help" and continues "I have not been eating good[.] I lost weight because of few reasons, sexually assaulted by my current cellmate." On the other version of the request form, the line about reports to security and the phrase "sexually assaulted by my current cellmate" do not appear. The version with the original stamp also includes this line: "I am afraid to talk to you in front of staff in fear of retaliations, from Sgt. King & Lt. Fields," while on the other version, the words "from Sgt. King & Lt. Fields" do not appear. Makdessi testified that the longer version was the original form he submitted, that Sgt. King and Lt. Fields yelled at him because he mentioned their names, and that they accidently returned both the original and an altered copy to him. (Tr. 68-69, Mar. 12, 2013.) Defendants' counsel argued that it appears likely Makdessi added the extra words on the "original" after an official returned it to him. The report notes the parties' dispute over which version Makdessi filed, but finds no need to resolve it, in light of the report's recommended finding of insufficient evidence that defendants had any knowledge of this particular request form. (Report 19.)

longstanding [and] well-documented . . ., and the circumstances suggest that the defendant had been exposed to information concerning the risk." (Pl. Obj. 7, quoting Report 19) (citing Parrish, 372 F.3d at 303)). Makdessi asserts that defendants' disclaimers are not credible in light of (1) operating procedures requiring personnel to report and investigate allegations of sexual assault and to immediately separate the inmates involved, and (2) Capt. Gallihar's testimony that he, Lt. Fields, and Sgt. King, as the officers responsible for the safety of inmates in Makdessi's pod, would or should have been made aware of sexual assault reports.

Capt. Gallihar testified that under VDOC policy, if an inmate told any prison staff member that he had been assaulted by his cellmate, the staff member would report that allegation to security. (Tr. 213-15, Mar. 13, 2013.) The cellmates would be separated immediately, pending an investigation, and if the allegation of assault was confirmed, both inmates would be documented as enemies to prevent them from being housed in the same housing unit. Even if the allegation was not confirmed, the inmates would be documented as "non-compatible" and separated. (Tr. 215.)

The evidence in the record supports the report's findings and conclusions, however. Officers' testimony identified circumstances, under this same system, in which a written or verbal allegation that an inmate feared for his safety would not be shared with security staff in his pod. Inmates mail grievances to the grievance coordinator, who distributes them for assignment and response. Security matters or sexual assault allegations might be directly assigned to the major, a higher-ranking officer than the defendant officers, and if the major then assigned the matter to an investigator, the officers at the pod would not necessarily see it. (Tr. 212-13, Mar. 13, 2013.)

Capt. Gallihar also testified that inmate complaints or grievances making general allegations about past assaults or safety issues, without mentioning time periods or a perpetrator's identity, did not require a report to security or an investigation. (Tr. 218-19.) Makdessi's complaints (or letters to officials) often mentioned assaults and intimidation by cellmates only in general terms as past problems, without identifying specific, recent events or individuals. Moreover, his written complaints and grievances often sought mental health treatment or a single cell assignment, rather than expressly requesting protection.[9] In some complaints, after mentioning his past troubles or current fearfulness, he stated that he did not want to go to segregation, the standard form of protection he would receive under the prison's policies.[10] Thus, the nature of Makdessi's complaints made it more likely for them to be diverted and addressed without notice to the security officials in Makdessi's pod. This evidence supports the credibility of the officers' testimony that Makdessi's written complaints about his fears of sexual assault never reached them. Thus, the court concludes Makdessi has not shown by a preponderance that these officers "must have known" of those fears from his written complaints. Parrish, 372 F.3d at 303.

Makdessi next asserts that judgment in his favor is proper because "the response by the official[s] [was] so patently inadequate that the official[s] must have known of the risk." (Pl. Obj. 6.) As an example of inadequate response, Makdessi points to the officers' failure to separate him from Smith in time to prevent the assault. He also asserts that investigators of the

---

[9] In Plaintiff's Exhibit 19, for example, Makdessi states, in part, "I have reported to you many times that I was sexually assaulted at Wallens Ridge . . . . I need to see someone that can & wants to help me." (Pl. Ex. 19.) The Qualified Mental Health Professional's ("QMHP") response on the request states, "[Y]ou were assessed and it has been determined that you do not have a mental health issue." (Pl. Ex. 19.)

[10] See Pl. Ex. 16 ("I have requested a single cell status many times but was denied. . . . I am suffering, from all the sexual assaults I had suffered. . . . There has not been one inmate that I was placed in the cell with that did not assault me or sexually assaulted me or charged me commissary for protection [and] still assaulted when commissary ran out. . . . I do not want to be placed in segregation. I want to be in a single cell. . . ."). The grievance office returned this grievance because Makdessi had not attached a request for a single cell.

December 21, 2010, assault failed to collect or test key items of physical evidence to verify that Smith raped him, and he faults the magistrate judge's report for omitting this information.

This objection stems from an apparent misreading of Parrish. The two-part subjective test in Parrish requires proof that the officers perceived the risk and perceived the inadequacy of the response. Id. "[A] factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." Id. (emphasis added). However, the court finds no suggestion in Parrish that the alleged inadequacy of an officer's response to a risk can support an inference that the officer perceived the risk in the first place.[11]

Makdessi's third legal objection asserts that "the risk to the inmate [was] so obvious that the officer knew of it because he could not have failed to know of it." (Pl. Obj. 10, citing Parrish, 372 F.3d at 303)). Makdessi points to contrasts between himself (5 feet 4 inches tall, age 49, physically hindered by back problems and asthma, depressed, security level 3, no gang affiliation, two minor prison infractions) and Smith (a "Gangster Disciple," disciplinary record of almost 30 charges, including masturbating and making sexual advances toward a non-offender, numerous aggravated assaults, and fighting with another inmate). He faults the report for omitting such information and contends that "[c]oupling these disparate inmate records with Makdessi's persistent warnings about Smith and his experiences with prior inmates, the risk to [his] safety was so obvious that the Court could conclude" Capt. Gallihar, Lt. Fields, and Sgt. King "knew of the risk." (Pl. Obj. 11.)

The record belies this objection. Each of the defendants testified that he had no involvement in assigning cellmates. (Tr. 94-95, Lt. Fields; 169, Sgt. King; 204-5, Capt. Gallihar,

---

[11] Clearly, the officers' failure to separate Smith and Makdessi before December 21, 2010, and the alleged shortcomings in the rape investigation thereafter, do not provide any measure of proof of defendants' prior knowledge that Smith posed a risk of harm to Makdessi.

Mar. 13, 2013.) Thus, the court cannot find that the physical and disciplinary differences between Makdessi and Smith undermine the report's determination, based on other evidence, that defendants credibly denied prior knowledge that Smith would likely victimize Makdessi.

Finally, Makdessi asserts that because the officers (particularly Sgt. King) knew Makdessi had been labeled as a snitch, they must have known how that label "exposed [him] to retaliation or risk of assault." (Pl. Obj. 11, citing Chatman v. Anderson, Civ. A. No. 7:05CV00407, 2005 WL 2090824 (W.D. Va. Aug. 29, 2005) (J. Conrad) (noting that "in certain circumstances, prison officials may be held liable for labeling an inmate a snitch")). This objection rests on testimony from Makdessi which the magistrate judge ruled inadmissible on hearsay grounds.[12] (Tr. 102-03, Mar. 12, 2013.) While other testimony makes vague reference to rumors around the pod that Makdessi was a snitch and Sgt. King had put a hit on his life,[13] no admissible testimony supports a reasonable inference that any of the defendants knew of such rumors before December 21, 2010, or perceived that Makdessi was at risk of harm from Smith. Moreover, Sgt. King expressly denied asking anyone to harm Makdessi or knowing he was at risk. (Tr. 138-141, Mar. 13, 2013.)

For the reasons stated, the court finds no support in the record for Makdessi's objections to the report. Therefore, the court will overrule the objections, adopt the report in its entirety, and dismiss this case with prejudice. An appropriate order will enter this day.

---

[12] Makdessi testified that when Smith assaulted him on December 21, 2010, Smith had a letter he said Sgt. King provided him in which Makdessi made complaints to the assistant warden; Smith then called Makdessi a snitch and told him "we're going to kill you." (Tr. 102-03, Mar. 12, 2013.) The magistrate judge sustained a defense hearsay objection as to this testimony about Smith's statements Makdessi. (Tr. 103.)

[13] Inmate Thomas testified that during the altercation on December 21, 2010, he heard Makdessi yelling that he was not a snitch, that "he was set up." (Tr. 212.) Makdessi testified that he heard Sgt. King tell an inmate named "Little Man" that he was going to take a hit out on Makdessi. (Tr. 84, Mar. 12, 2013.) Inmate Chapman testified that Little Man told him that Sgt. King had told Little Man about a contract on Makdessi's life. (Tr. 218-19.)

In adopting the report, however, the court reemphasizes the magistrate judge's observation in closing her report —"it is clear . . . that the staff at Wallens Ridge should have been more diligent in handling Makdessi's claims of sexual assault." (Report 21.) No matter what an inmate's crime, his prison sentence should not include the sort of victimization described in Makdessi's many complaints and grievances. Prison officials, from the security officers to the mental health professionals and grievance coordinators, have an ongoing constitutional obligation to protect inmates from each other.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 24th day of September, 2013.

*/s/ Glen Conrad*
Chief United States District Judge