CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 24 2017

JULIA C. DUDLEY, CLERK
BY:
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADIB EDDIE RAMEZ MAKDESSI, | ) | CASE NO. 7:11CV00262 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | (Adopting Report and Recommendation) |
| | ) | |
| LT. FIELDS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

This prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 claims that three supervisory prison officials failed to protect the plaintiff from sexual and physical assaults by his cell mate, in violation of his Eighth Amendment rights. The parties presented their evidence in a bench trial, and the case is presently before the court on the report and recommendation ("the report") of Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b)(1)(B), recommending judgment for the defendants. After de novo review of the evidence, for the reasons that follow, the court will overrule the plaintiff's objections, adopt the report, and enter judgment for the defendants, Lt. Fields, Sgt. King, and Capt. Gallihar.

## Background

The plaintiff, Adib Eddie Ramez Makdessi was incarcerated at Wallens Ridge State Prison ("Wallens Ridge") at the time his § 1983 claims arose.[1] Makdessi has presented copies of numerous administrative complaints he filed, beginning in 2007, claiming vulnerability to physical attacks from other inmates and alleging that he had been the victim of prior sexual assaults from cell mates. He has also testified that he made written and verbal complaints about fearing injury from Michael Smith, who became his cell mate in early August 2006. Makdessi

---

[1] The court offers only a brief summary of events here to provide context for discussion of the issues.

has testified that on December 21, 2010, Smith physically and sexually assaulted him over a three-hour period inside their cell. Video footage and other evidence indicates that when officers unlocked the cell door for routine removal of lunch trays and trash, a bloodied Makdessi ran out of the cell with Smith in pursuit to continue his assault, joined by other inmates in the pod. After a warning shot from the control booth, Smith and these other inmates immediately fell to the ground, and Makdessi ran into the vestibule. Officers took Makdessi to the medical unit, where he received stitches to close two cuts on his face and underwent x-rays. Officers also transported him to an outside hospital for a Physical Evidence Recovery Kit ("PERK") test. Six weeks later, Makdessi was transferred to a protective custody unit at another prison facility.

Makdessi's pro se § 1983 complaint alleged that several Wallens Ridge officers orchestrated and/or failed to protect him from Smith's attack or failed to intervene promptly once that attack began. The court denied summary judgment as to Makdessi's claims against Defendants Gallihar, Fields, King, Sumpter, Boyd, Bellamy, and Hall, and referred the matter to Judge Sargent for appropriate proceedings under § 636(b)(1)(B). Shortly thereafter, counsel entered an appearance to represent Makdessi.

Judge Sargent conducted an evidentiary hearing on March 12-14, 2013, and issued her first report and recommendation in the case on May 3, 2013, recommending judgment for the defendants. Makdessi filed objections. After conducting a de novo review of pertinent parts of the report and the evidence, the court overruled the objections, adopted the report, and granted judgment to defendants. Makdessi appealed. The United States Court of Appeals for the Fourth Circuit affirmed the judgment in part, but reversed and remanded the case as to Makdessi's claims against Fields, King, and Gallihar. See Makdessi v. Fields, No. 7:11CV00262, 2013 WL 5353330 (W.D. Va. Sept. 24, 2013), rev'd in part by 789 F.3d 126, 136 (4th Cir. 2015).

2

The parties presented additional evidence and argument before Judge Sargent in November 2015, but otherwise agreed to rely on the evidence presented during the March 2013 proceedings. Judge Sargent has now entered her second report recommending judgment for the defendants. Makdessi has filed written objections to portions of the report that the court must now resolve.

## Standards of Review

In a civil case, the plaintiff carries the burden of proving each of the elements of his claim by a prepondance of the evidence. In re Winship, 297 U.S. 358, 371 (1970). "The burden of showing something by a preponderance of the evidence . . . requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (quotation marks omitted); see also McNeal v. United States, 689 F.2d 1202 (4th Cir. 1982) (affirming a finding for the defendant where the evidence was in equipoise).

The magistrate judge's report under § 636(b)(1)(B) makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation marks omitted); Fed. R. Civ. P. 72. In contrast, the court is charged with making a de novo determination of any portions of the magistrate judge's recommendation to which a specific objection is made. 28 U.S.C. § 636(b)(1)(C). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," the authority and the responsibility to

3

make an informed final determination remains with the district judge. United States v. Raddatz, 447 U.S. 667, 682-83 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985) (citation omitted).

Discussion

Among duties the Eighth Amendment's prohibition against cruel and unusual punishment imposes on prison officials is an "obligat[ion] to take reasonable measures to guarantee inmate safety," specifically, "'to protect prisoners from violence at the hands of other prisoners.'" Makdessi, 789 F.3d at 132 (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). A prisoner alleging that prison officials have failed to keep him reasonably safe from other inmates must show that (i) objectively, the prisoner was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the official must have had a "'sufficiently culpable state of mind' to be held liable," namely, the state of "'deliberate indifference'" to the substantial risk of serious harm. Id. at 133 (quoting Farmer, 511 U.S. at 834).

The report recommends a finding of fact and conclusion of law that Makdessi has satisfied the first, objective element of this standard by demonstrating that he was assaulted on December 21, 2010, and suffered serious physical injuries. (Report 10, 21, ECF 201.) In the absence of any objection from the parties, and finding no clear error, the court adopts this portion of the report.

Proving deliberate indifference requires showing "'more than ordinary lack of due care for the prisoner's interests or safety,' and 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'"

4

Case 7:11-cv-00262-GEC-PMS   Document 204   Filed 01/24/17   Page 4 of 10   Pageid#: 1999

Id. (quoting Farmer, 511 U.S. at 135). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot [constitute] infliction of punishment." Farmer, 511 U.S. at 838. Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Therefore, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

> A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (quotation marks omitted). Direct evidence of actual knowledge is not required. See id. at 842-43, 114 S. Ct. 1970.
> Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability. "[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify 'underlying facts that he strongly suspected to be true,'" or that he "'declined to confirm inferences of risk that he strongly suspected to exist.'" Brice [v. Virginia Beach Corr. Ctr.], 58 F.3d [101,] at 105 [(4th Cir. 1995)] (quoting Farmer, 511 U.S. at 843 n. 8, 114 S. Ct. 1970). And "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843, 114 S. Ct. 1970. Nor is it dispositive that the prisoner did not give advance warning of the risk or protest his exposure to the risk. Id. at 848-49, 114 S. Ct. 1970.
> A prison official remains free to rebut the deliberate indifference charge, even in the face of an obvious risk. "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844, 114 S. Ct. 1970. But absent successful rebuttal, they may be held liable for obvious risks they must have known. Id. at 842, 114 S. Ct. 1970.

5

Makdessi, 789 F.3d at 133-34. Furthermore, as stated,

> prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions . . . .

Farmer, 511 U.S. at 844-45 (internal quotation marks and citations omitted).

In the section titled "Facts," Judge Sargent's report and recommendation offers a 73-page, detailed summary of the record evidence, including witness testimony, video footage, and admitted documentation. Throughout, this summary of the evidence reflects bald contradictions between portions of Makdessi's testimony, between his testimony and the testimony of other inmate and staff witnesses, between statements Makdessi made in various administrative remedy forms and in follow up interviews with mental health staff or prison investigators, and between Makdessi's testimony and documents in evidence. The report also notes Makdessi's lack of dates and repeated use of generic terms like "cell mates" and "they" in his written allegations and his testimony of past assaults and retaliation as undermining the credibility of such accounts.

Makdessi states that his objection brief will highlight "certain facts" not mentioned or given insufficient weight in the report. The brief then provides a 10-page summary of parts of Makdessi's testimony and other evidence he presented, stated in the light most favorable to him. The court has specifically reviewed the evidence Makdessi has highlighted. The court has also conducted de novo review of the hearing transcript and the exhibits noted. Makdessi does not, however, identify any item of evidence omitted from the report that warrants rejection or amendment of the report's evidence summary, and the court finds no such disposition to be

6

necessary.[2] Therefore, the court adopts the "Facts" section of the report as an accurate summary of the evidence presented.

The analysis portion of the report recommends finding that much of Makdessi's testimony, as well as many statements in his numerous written complaint and grievance forms in the record, are not credible. This portion of the report offers some examples of discrepancies that undermine the veracity of Makdessi's accounts. But the report's finding on witness credibility also clearly relies on the many other discrepancies and contradictions reflected in the lengthy summary of the evidence. The report recommends finding credible the officers' testimony denying personal knowledge of a substantial risk of serious harm presented by Makdessi's continued assignment as Smith's cell mate. Finally, the report recommends finding unpersuasive Makdessi's circumstantial evidence purporting to show that differences between him and Smith posed risks so obviously substantial that the officers must have known of them, despite their denials of knowing.

Makdessi makes no specific objection to the report's conclusion that the defendants did not have "actual knowledge of the danger posed by Smith because they were the reason Smith had attempted to harm Makdessi or because Makdessi had told them that Smith had assaulted him in the past or that he feared for his life." (Report 82.) In the absence of an objection and finding no clear error, the court will adopt this finding.

Makdessi contends that the report overemphasized his credibility problems and ignored evidence of obvious safety concerns the defendants must have known about continuing to cell him with Smith. Among other things, he asserts that evidence proves: the defendants' job duties

---

[2] Makdessi faults the accuracy of the report's facts section in only one particular regard: its statement that locator cards contradicted Makdessi's testimony on the number of days he spent in segregation after he feared harm from his cell mate in September 2007. Makdessi claims that the cards prove the accuracy of his testimony on this point. The court finds this minor discrepancy immaterial, given the fact that extensive other evidence summarized in the report, unchallenged by Makdessi, severely undermines his credibility on numerous other points.

7

must have exposed them to his prior complaints seeking protection because of his vulnerabilities and past inmate assaults; Smith's gang affiliation, Makdessi's reputation as a snitch and physical disabilities, and the five-inch height and fifteen-year age differences between Makdessi and Smith as cell mates presented obviously substantial risks of serious harm; and Smith's 115 days of segregation and the defendants' encounters with him must have put them on notice that his disciplinary history (including injury to another inmate in February 2010) presented a substantial risk of harm to Makdessi as his cell mate.

In hindsight, it is undisputed that from 2007 to 2010, Makdessi made complaints about being vulnerable to physical and sexual assaults from other inmates. It is also undisputed that Smith assaulted and harmed Makdessi on December 21, 2010; and that, thereafter, prison officials concluded that Makdessi could no longer be safely housed in the general population at Wallens Ridge. The defendants did not, however, have the benefit of hindsight in reaching the perceptions about the cell mates that directed their actions.

Moreover, the court cannot find that the report ignores evidence, unfairly evaluates witness credibility, or improperly relies on a lack thereof in reaching its findings and conclusions. The weight of the evidence indicates that these defendants never actually saw or heard Makdessi's complaints of prior physical or sexual cell mate assaults before the December 21, 2010, incident, and that the allegations in Makdessi's prior complaints were of doubtful veracity in any event; that a Wallens Ridge mental health professional had assessed Makdessi and found no reason for him to be assigned to a single cell, as he had requested; that Makdessi is serving a life sentence for a brutal double murder, while in 2010, Smith was within nine years of completing his sentence for carjacking;[3] that Smith and Makdessi were classified at the same

---

[3] Inmate records online indicate that Smith's expected release date is June 17, 2019.

8

security level; and that the visible physical and age differences between the cell mates and Smith's gang affiliation and segregation time did not present "red flags" to these experienced corrections officials of danger in maintaining the cell assignment. The evidence also indicates that under Wallens Ridge policies, inmates were assigned as cell mates only if they agreed to the arrangement, and an inmate who refused to return to his cell out of fear for his safety would be immediately placed in segregation for protection purposes, pending an investigation.[4] In nearly five months as Smith's cell mate, Makdessi never refused to return to his cell, a fact that undermines the credibility of his claim that he himself truly feared for his safety from Smith before December 21.

Makdessi's primary objection is that the report devoted only three paragraphs to analyzing whether the differences between Smith and Makdessi so obviously presented a substantial risk of serious harm to Makdessi that the defendants must have known of it. Makdessi argues that this evidence of obvious risk wins his case for deliberate indifference because the defendants failed to rebut it with additional evidence. The court cannot agree.

First, the Supreme Court has expressly rejected the notion that "a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a <u>reasonable</u> prison official would have noticed it. Farmer, 511 U.S. at 842 (emphasis added). "That a trier of fact <u>may</u> infer knowledge from the obvious, in other words, does not mean that it <u>must</u> do so." Id. at 844 (emphasis added). Second, the defendants did offer rebuttal testimony that the differences between the cell mates in age, height, disciplinary history, and gang affiliation did not necessarily signal that changing the cell assignment for safety reasons was warranted. See id. at 845 (noting that officials may

---

[4] The court finds that this immediate segregation policy itself qualifies as a reasonable response to the undeniable, inherent risk that men convicted of violent crimes and then confined for long periods in a small prison cell may develop conflicts that may escalate, over time, to physical contact.

9

escape liability if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent").

Weighing the evidence as a whole, including witness credibility and other factors emphasized in the report and the objections thereto, the court finds by a preponderance of the evidence that none of the defendants knew before Makdessi ran out of his cell on December 21, 2010, that housing him in the same cell with Smith presented a substantial risk that Smith would cause him serious harm. Thus, the court concludes that the defendants are entitled to judgment.

## Conclusion

For reasons discussed herein, the court will overrule Makdessi's objections as immaterial or without merit and adopt the magistrate judge's report. Based on the the report and the court's de novo review of the evidence as reflected in this opinion, the court concludes that Makdessi has failed at trial to prove his case by a preponderance of the evidence. Therefore, the court will enter judgment for the defendants. An appropriate order will enter this day.

ENTER: This 24th day of January, 2017.

_____
Chief United States District Judge